IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID JOHN CARNIVALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) Civ. No. 08-764-SLR | |
| STAUB DESIGN, LLC; | ) | |
| JOHN STAUB; | ) | |
| DAVID STAUB; | ) | |
| | ) | |
| Defendants. | ) | |

---

David John Carnivale, Staten Island, New York.  Pro se Plaintiff.

Peter J. Duhig, Esquire of Buchanan Ingersoll & Rooney PC, Wilmington, Delaware. Counsel for Defendants.  Of Counsel:  S. Lloyd Smith, Esquire and Bryce J. Maynard, Esquire of Buchanan Ingersoll & Rooney PC, Alexandria, Virginia.

---

**MEMORANDUM OPINION**

Dated: March 31, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff David John Carnivale ("plaintiff") filed a complaint against defendants Staub Design, LLC, John Staub, and David Staub ("defendants") in the United States District Court for the Eastern District of New York.  The complaint alleges that defendants' use of the domain name www.theaffordablehouse.com violates the Anticybersquatting Consumer Protection Act ("ACPA"), codified as § 43(d) of the Lanham Act , 15 U.S.C. § 1115(d).  Pursuant to a motion by defendants, the Eastern District of New York transferred the case to this district because it lacked personal jurisdiction over defendants.  (D.I. 24)  This court has jurisdiction over the matter under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a).  Presently before the court is plaintiff's motion for summary judgment (D.I. 53) and defendants' cross-motion for summary judgment (D.I. 54).  For the reasons below, the court grants-in-part and denies-in-part plaintiff's motion, and denies defendants' motion.

## II. BACKGROUND

Plaintiff is an architect from Staten Island, New York, who secured U.S. Trademark and Service Mark Registration No. 3,058,545 on the mark THE AFFORDABLE HOUSE for "architectural plans and specifications" and "on-line retail store services featuring books and sets of blue prints."  (D.I. 1 at ¶1)  The registration issued on February 14, 2006, on the basis of 15 U.S.C. § 1051(a), § 1(a) of the Lanham Act, meaning plaintiff showed actual use of the mark in commerce prior to filing his application.  (D.I. 1, app.13)  Plaintiff filed his application for registration on January 4, 2005, certifying use of the mark in commerce since March 15, 1996.  (D.I. 1, app.19)

Plaintiff published the book "The Affordable House" in 1994, and registered the domain name www.affordablehouse.com on July 20, 1998 to sell copies of his book and the blueprint sets it contains. (D.I. 1, ex. 2 at 6)

Defendant Staub Design, LLC ("Staub Design") is a Delaware limited liability corporation with its principal place of business in Arlington, Virginia. (D.I. 24 at 1) Staub Design is a residential design company focused on the application of autoclaved aerated concrete ("AAC"), a lightweight building material. (D.I. 54 at 1) Defendants John and David Staub are the principals of Staub Design. (*Id.*) In the spring of 2004, while creating a list of potential domain names to use for their AAC project, defendants learned of plaintiff's registered domain name www.affordablehouse.com. (D.I. 54 at 3) Despite this knowledge, in May of 2004, Staub Design registered the domain name www.theaffordablehouse.com and began using it to post information on AAC in December of 2004. (D.I. 51 at 3) Defendants used the slogan "The Affordable House – a project of Staub Design LLC" on their website, as well as on booths at renewable energy conferences held between 2005 and 2007. (D.I. 54 at 2)

Plaintiff sent defendants cease and desist letters in March of 2007 asserting his rights to the mark THE AFFORDABLE HOUSE and his belief that defendants' use of the domain name www.theaffordablehouse.com was infringement. (D.I. 1, app. 81) On May 3, 2007, defendants moved the content of www.theaffordablehouse.com to www.staubdesign.com. (D.I. 50 at 4) Defendants also filed a petition for cancellation of plaintiff's registration with the United States Patent and Trademark Office ("PTO") Trademark Trial and Appeal Board ("TTAB"), Cancellation No. 92047553, on May 16, 2007. (D.I. 54 at 2) The TTAB has suspended that proceeding pending the resolution

2

of this lawsuit. *Staub Design, LLC v. Carnivale*, Cancellation No. 92047553, #11 (October 18, 2007),

http://ttabvue.uspto.gov/ttabvue/v?pno=92047553&pty=CAN&eno=11. Plaintiff filed the complaint in this action on May, 30, 2007 in the Unites States District Court for the Eastern District of New York. (D.I. 1) On January 1, 2008, Judge Korman dismissed the complaint for lack of personal jurisdiction over defendants, but subsequently granted plaintiff's motion to transfer the case to this district. (D.I. 24; D.I. 27) Presently before the court is plaintiff's motion for summary judgment (D.I. 53) and defendants' cross-motion for summary judgment (D.I. 54).

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57

3

F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). To survive a motion for summary judgment, plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

The ACPA, § 43(d) of the Lanham Act , 15 U.S.C. § 1115(d) states:

A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person
(i) has a bad faith intent to profit from the mark . . . and
(ii) registers, traffics in, or uses a domain name that. . .
(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to the mark;
(II) in the case of a famous mark that is famous at the time of the registration of the domain name, is identical or confusingly similar to or dilutive of that mark.

4

The Third Circuit refined the analysis under the ACPA to a three-part inquiry.  To succeed on an ACPA claim, plaintiff must prove that:  (1) his mark was distinctive or famous at the time defendants registered their domain name; (2) defendants' domain name is identical or confusingly similar to (or, if the mark is famous, dilutive of) plaintiff's mark; and (3) defendants registered the domain name with the bad faith intent to profit from the mark. *See Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).  The parties dispute whether plaintiff has shown all three of these elements.

The court first will address plaintiff's motion for summary judgment.  To prevail, plaintiff must show no genuine issue of material fact exists on the establishment of all three elements of his ACPA claim.  If a genuine issue exists on any one of the elements, plaintiff's motion must be denied.  The court will then address defendants' cross-motion for summary judgment.  For defendants to prevail, they must show no genuine issue exists on plaintiff's failure to establish at least one of the three elements of the claim.  If a reasonable fact finder could decide, based on the current record, that plaintiff established all of the requisite elements, defendants' motion must be denied.

### A. Plaintiff's Motion for Summary Judgment

After reviewing the submissions and record, the court finds no genuine issue exists on the question of distinctiveness, a material fact, or on plaintiff's showing that defendants' domain name is identical or confusingly similar to his mark.  But the court finds that a genuine issue exists on the question of bad faith; both parties have statutory factors in their favor, and it is improper to weigh these factors on summary judgment.  Plaintiff's motion for summary judgment, therefore, is granted-in-part and denied-in-part.

5

### 1. Distinctive or famous mark

If a mark is "distinctive" or "famous" at the time a defendant registers an accused domain name, the ACPA prohibits the registration, trafficking in, or use of that domain name if it is identical or confusingly similar to the mark. 15 U.S.C. § 1115(d). For famous marks, registration, trafficking in, or use of a domain name that is dilutive of the mark is also prohibited. *Id.* Therefore, to establish liability, plaintiff must show that the term THE AFFORDABLE HOUSE was distinctive or famous in May of 2004, when defendants registered the domain name www.theaffordablehouse.com.

"Distinctiveness" is a term of art in trademark law that describes terms or designations that are eligible for legal protection as "marks." 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 11:2 (4th ed. 2010). Terms are usually evaluated on a scale of distinctiveness, sometimes called "the spectrum of distinctiveness," a phrase coined by Judge Friendly in the famous case *Abercrombie & Fitch Co. V. Hunting World*, Inc., 537 F.2d 4 (2d Cir. 1976). The scale includes four categories, which listed from most to least distinctive are: arbitrary or fanciful terms, suggestive terms, descriptive terms, and generic terms. *See A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir. 1986) (identifying the four categories of terms). The first two categories, arbitrary or fanciful terms and suggestive terms, are considered "inherently distinctive" and are automatically protectable as marks. *E.T. Browne Drug Co. v. Cococare Products, Inc.*, 538 F.3d 185, 191 (3d Cir. 2008). The third type, descriptive terms, are not automatically distinctive. *Id.* But descriptive terms can "acquire distinctiveness" if the consuming public comes to associate the term with a specific

6

producer, i.e., the term identifies the source to the consumer, not just the product. *Id.* at 199 ("Secondary meaning exists when the mark is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services."); *see also Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc*, 214 F.3d 432, 438 (3d Cir. 2000) (same). When a term achieves this, it has "acquired distinctiveness," also called secondary meaning, and is then eligible for protection as a mark. *See E.T. Brown*, 538 F.3d at 191; *see also* 15 U.S.C. § 1052(f) (allowing registration of marks that have acquired distinctiveness). The last category of terms, generic terms, are never distinctive or protectable as marks. *E.T. Brown*, 538 F.3d at 191. Distinctiveness is evaluated with reference to the goods in questions, i.e., is the term a generic name for the types of goods at issue? Does the term describe qualities of the goods in question? *See Canfield*, 808 F.2d at 296 (outlining the tests for determining in which category a mark falls).

To succeed on his summary judgment motion, plaintiff must show, among other things, that no genuine issue exists on the question of distinctiveness, i.e., no rational person could find that plaintiff's mark lacks distinctiveness. The record must compel the factual finding that plaintiff's mark is suggestive or descriptive with secondary meaning.

Plaintiff presents evidence that his mark is distinctive, which, if uncontested, establishes that there is no genuine issue on this element. The most significant piece of evidence is plaintiff's registration, which issued on February 14, 2006 based on a January 1, 2005 application. (D.I. 53 at 1) Section 7(b) of the Lanham Act indicates that a certificate of registration is prima facie evidence of the registered mark's validity. 15

U.S.C. § 1057(b) ("A certificate of registration of a mark upon the principal register

provided by this Act shall be prima facie evidence of the validity of the registered mark.")

The Third Circuit has stated:

> If the mark at issue is federally registered and has become incontestible,
> then validity, legal protectability, and ownership are proved. . . . If the mark
> has not been federally registered or, if registered, has not achieved
> incontestability, then "validity depends on proof of secondary meaning,
> unless the unregistered or contestable mark is inherently distinctive."

*Commerce Nat. Ins.*, 214 F.3d at 438 (internal citations omitted). Therefore, in this

Circuit, secondary meaning is not presumed on contestable registrations of descriptive

marks; a separate showing of secondary meaning is still required. The scope of the §

7(b) presumption in this Circuit, however, is not at issue in this case because an ACPA

claim requires a showing of distinctiveness (or fame) at the time a defendant registers the

accused domain name. Here, defendants registered the domain name in May 2004, but

the § 7(b) presumption is not available to plaintiff until, at the earliest, his application date

of February 14, 2006.

Still, issuance of the registration is circumstantial evidence that plaintiff's mark was

distinctive two years earlier, when defendants registered the accused domain name.

Plaintiff's registration was accepted on the basis of § 1(a) of the Lanham Act, the actual

use in commerce provision, with no reliance on § 2(f), the acquired

distinctiveness/secondary meaning provision. (D.I. 1, app. 19) This indicates the PTO

accepted the mark as inherently distinctive (suggestive or arbitrary/fanciful) in February of

2006, indicating plaintiff's mark was inherently distinctive two years earlier in May of

2004. Inherent distinctiveness is not acquired; if the mark was inherently distinctive in

2006, by definition it was inherently distinctive in 2004. The registration is evidence that

no genuine issue exists on the establishment the mark's distinctiveness.

Plaintiff also presents evidence of continuous use of the mark since 1996. Plaintiff

introduces newspaper articles documenting his use of the mark for his book and website

since 1997 (D.I. 1, app. 32-37), advertisements for his website using the mark from 2002

and 2004 (D.I. 1, app. 38-39), and customer letters ordering his book and blueprints,

which make reference to the mark, from every year from 1996 to 2002 (D.I. 1, app. 41-

64). The court notes that, under § 2(f) of the Lanham Act, proof of substantially exclusive

and continuous use of a mark in commerce for five years is prima facie evidence of

acquired distinctiveness. This evidence provides a second basis for finding plaintiff's

mark distinctive, that it is descriptive with secondary meaning.

In *Shields v. Zuccarini*, 254 F.3d at 482, the Third Circuit applied the statutory

factors from § 43(c) of the Lanham Act,[1] the dilution provision, to determine if a mark was

distinctive or famous. In that case, the Third Circuit found the plaintiff's mark distinctive,

---

[1] Section 43(c)(1) states:

In determining whether a mark is distinctive and famous, a court may
consider factors such as, but not limited to --

> (A) the degree of inherent or acquired distinctiveness of the
> mark;
> (B) the duration and extent of use of the mark in connection
> with the goods or services with which the mark is used;
> (C) the duration and extent of advertising and publicity of the
> mark;
> (D) the geographical extent of the trading area in which the
> mark is used;
> (E) the channels of trade for the goods or services with
> which the mark is used;
> (F) the degree of recognition of the mark in the trading areas
> and channels of trade used by the marks' owner and the
> person against whom the injunction is sought;
> (G) the nature and extent of use of the same or similar
> marks by third parties.

9

noting that the plaintiff ran the only operation using the mark, used the mark for fifteen

years, used a domain name comprised of the mark for four years, sold merchandise

under the mark across the country, and advertised the business in widely distributed

magazines. *Id.* at 483. The Court also noted that the New York Times ran a story on the

plaintiff's business, and that the plaintiff's website received in excess of 700,000 visits per

month. *Id.* While the instant record differs from that reviewed in *Shields v. Zuccarini*,

nevertheless, plaintiff at bar has used the mark for fourteen years, used a domain name

comprised of the mark for twelve years, sold his goods under the mark across the country

since 1996, and advertised in at least two publications (Home Building Magazine and the

Seattle Times). (D.I. 1 at 6; D.I. 1, app. 32-64) Also two publications (Staten Island

Advance and Architecture Business and Economics) have published articles reporting on

plaintiff's business. (*Id.*) Therefore, *Shields v. Zuccarini* provides an additional basis for

finding plaintiff's mark distinctive.

      To defeat plaintiff's motion for summary judgment, defendants "must come forward

with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).

Defendants argue that the term AFFORDABLE HOUSE is generic and, thus, not

distinctive. (D.I. 54 at 5) They assert that the mark is made up of two non-distinctive

terms, making the term as a whole non-distinctive, and that there "are numerous generic

and descriptive uses of the mark." (*Id.*) In support of this argument, defendants rely on

an affidavit by one of the defendants, John Staub, the president and managing member

of Staub Design. (D.I. 54 ex. A) Defendants also discredit plaintiff's registration by

pointing to the pending cancellation proceeding. (Id.)

As an initial matter, defendants' argument that plaintiff's mark consists of two generic terms is insufficient to prove the mark is generic. Terms are examined as a whole and, when taken together, words that on their own could not qualify as marks may be protectable. See Berner Int'l Corp. V. Mars Sales Co., 987 F.2d 975, 981 (3d Cir. 1993).

A generic term is essentially the common name for an article. See Canfield, 808 F.2d at 297 (stating that generic terms "function as the common descriptive name of a product class" and are never protectable because protection would "deprive competing manufacturers of the product [] the right to call an article by its name." (quoting Abercrombie, 537 F.2d at 9)). The test for genericness in this Circuit is the primary significance test: whether the primary significance of the term **in the minds of the consuming public** is the product or the producer. E.T. Browne, 538 F.3d at 193-94 ("[T]he primary significance test remains the central test of genericness in our Circuit."). The Third Circuit has stated that courts must ask whether the evidence demonstrates that the term at issue primarily signifies the product genus **to consumers**. But defendants support their assertion that the mark is generic only with a statement from John Staub, the president of Stuab Design, who makes no assertion that he is a member of the "consuming public." (D.I. 54 ex. A) Since the affidavit provides no insight on the view of the consuming public, it has no bearing on the resolution of the primary significance test; it is legally irrelevant.[2] See Berner, 987 F.2d at 981 (reversing a lower court finding that a

_____

[2] Even if the court considers the substance of defendants' affidavit, it does not indicate plaintiff's mark is generic. Generic uses of the term AFFORDABLE HOUSE do

mark was generic because the district court focused on the term's meaning to the

"manufacturing industry" and not the consuming public, and stating that the term's

"meaning to a non-purchasing segment of the population is not important"). Defendants

are left with no support for their assertion of genericness, but only "'bare assertions,

conclusory allegations or suspicions' to show the existence of a genuine issue."

*Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v.

Catrett*, 477 U.S. 317, 325 (1986)). This is insufficient to contest plaintiff's assertion of

distinctiveness. A fact finder would have nothing to weigh against plaintiff's evidence.

The court holds that plaintiff has demonstrated that no genuine issue exists on the

question of distinctiveness, through his later issued registration indicating his mark is

inherently distinctive, his continuous use of the mark for fourteen years, and the Third

Circuit's decision in *Shields v. Zuccarini*. Defendants present no evidence that indicates

plaintiff's mark lacks distinctiveness, so plaintiff has met his burden under the first step of

the *Celotex* summary judgment standard.

### 2. Identical or confusingly similar domain name

The next inquiry under plaintiff's claim is whether defendants' domain name is

"identical or confusingly similar" to plaintiff's mark. 15 U.S.C. § 1115(d); *see Shields v.

Zuccarini*, 254 F.3d at 483. This element requires a showing that plaintiff's mark and

---

not indicate that the mark as used by plaintiff is generic. The term AFFORDABLE
HOUSE would likely be generic for the sale of houses or a website of real estate
listings. But it is not self evident that its use on architecture books, blueprint sets, and
online retail services selling these items is generic. The use of AFFORDABLE HOUSE
on blueprints may be descriptive (i.e.,a quality of these blueprints is that following them
produces an affordable house) or possibly even suggestive (if some imagination,
thought, or perception is necessary to discern a quality of the blue prints, i.e., that they
embody an efficient design).

defendants' domain name are so similar in sight, sound, or meaning that they could be confused. 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 25:78. In *Shields v. Zuccarini*, the Third Circuit found the domain names joescartoon.com, joecarton.com, joescartons.com, joescartoons.com, and cartoonjoe.com confusingly similar to the plaintiff's mark JOE CARTOON. *Shields v. Zuccarini*, 254 F.3d at 483. Here, defendants argue that their domain name, theaffordablehouse.com, is not confusingly similar to plaintiff's mark, THE AFFORDABLE HOUSE, because plaintiff's mark is weak and the parties offer different products and services. (D.I. 54 at 6)

These arguments are unpersuasive. The domain name and plaintiff's mark are identical, and more similar than the domain names and mark in *Shields v. Zuccarini*. Further, under the ACPA, the analysis is made " without regard to the goods or services of the parties," making defendants' second argument legally irrelevant. 15 U.S.C. § 1115(d). The court finds no colorable argument that the domain name is not identical or confusingly similar to plaintiff's mark. A reasonable fact finder is compelled to find for plaintiff on this element, as no other reasonable result is possible.

### 3. Bad faith intent to profit

The final element plaintiff must prove is that defendants acted with a bad faith intent to profit from plaintiff's mark. 15 U.S.C. § 1115(d)(I). Section 43(d)(1)(B)(i) of the Lanham Act, 15 U.S.C. § 1125(d)(1)(B)(I), provides a non-exhaustive list of nine factors for determining if a plaintiff has shown the requisite bad faith. The factors are:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;
(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

13

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C.A. § 1125(d)(1)(B)(I). The Third Circuit has stated that applying these factors

"is a holistic, not mechanical, exercise." *Green v. Fornario*, 486 F.3d 100, 106 (3d Cir.

2007) (upholding a denial of attorney fees for the plaintiff because, among other things,

defendant had a colorable defense of no bad faith against the plaintiff's ACPA claim).

This directive indicates that summary judgment is inappropriate on this issue, since the

statutory factors must be weighed as a whole and a factual determination of bad faith

must be made. *See Shields v. Zuccarini*, 254 F.3d at 486 (upholding a district court

finding of bad faith because of "sufficient evidence").

Here, both parties have statutory factors in their favor, and a fact finder must

14

weigh these to determine if there is bad faith.  The first, second, third, and ninth factors favor plaintiff:  defendants have no trademark or other intellectual property rights in their domain name, the domain name does not consist of defendants' name, defendants have not used the domain name in connection with a bona fide offer of goods or services, and plaintiff's mark is distinctive.  The fifth, sixth, seventh, and eighth factors favor defendants:  no evidence indicates that defendants intended to divert consumers away from plaintiff's site, defendants made no offer to transfer the accused domain name to plaintiff, no evidence indicates that defendants made misrepresentations when registering the domain name, and there is no evidence that defendants registered multiple confusingly similar or identical domain names.

Plaintiff argues that defendants exhibited bad faith because they knew of his domain name, www.affordablehouse.com, when they registered the accused domain name, www.theaffordablehouse.com, a point defendants concede.  (D.I. 53 at 2; D.I. 54 at 7-8)  While this conduct does not implicate any of the statutory factors, that list is non-exhaustive and this evidence would be considered in the "holistic" evaluation. Defendants argue against bad faith by asserting they had no knowledge of plaintiff's trademark rights at the time they registered the domain name, they never used the domain name for a commercial purposes, and they have discontinued use of the accused domain name.  (D.I. 54 at 7)

Since it is necessary for a fact finder to weigh the statutory factors and other relevant evidence, conduct the "holistic exercise" required under Third Circuit law, and make a factual determination on the existence of bad faith, a genuine issue of material facts exists.  Plaintiff's motion for summary judgment is denied on this ground and the

15

issue of bad faith must proceed to trial.

## B. Defendants' Motion for Summary Judgment

To succeed on their motion for summary judgment, defendants must prove that the record, with all inferences taken in the light most favorable to plaintiff, compels a finding that plaintiff fails to establish at least one element of his claim.

Turning to the first element, that plaintiff's mark was distinctive at the time defendants registered the accused domain name, the only argument defendants make is that plaintiff's mark is generic. (D.I. 54 at 5) As discussed above, this argument is unpersuasive. The only evidence defendants present is an affidavit by defendant John Staub, where he states the term is generic. (D.I. 54 ex. A) The test for genericness, the primary significance test, inquires whether the consuming public associates the mark with the product being sold or the producer. *E.T. Browne*, 538 F.3d at 193-94. Since John Staub makes no claim that he is a member of the consuming public, his affidavit is not probative on the issue of genericness. This is the only argument defendants raise on the first element, therefore, the court denies summary judgment for defendants on this basis.

The second element requires a showing that defendants' domain name is identical or confusingly similar to plaintiff's mark. 15 U.S.C. § 1115(d)(1)(A)(II). As discussed above, the domain name is identical to plaintiff's mark, so defendants are not entitled to summary judgment based on a failure to establish this element. Defendants' arguments to the contrary are unpersuasive or legally irrelevant.

The third element requires a showing that defendants registered the accused domain name with a bad faith intent to profit from plaintiff's mark. 15 U.S.C. § 1115(d)(1)(A)(i). As discussed above, determining bad faith involves weighing nine

16

statutory factors along with any other probative evidence.  See 15 U.S.C. §

1115(d)(1)(B)(1)(I)-(XI).  A reasonable fact finder could determine, based on the current

record, that defendants exhibited bad faith; a finding of no bad faith is not compelled by

the evidence.  Since defendants fail to show that plaintiff cannot establish an element of

his claim, their motion for summary judgment is denied.

## V.  CONCLUSION

Based upon the foregoing analysis, the court grants-in-part and denies-in-part

plaintiff's motion for summary judgment and denies defendants' cross motion for

summary judgment.