IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID JOHN CARNIVALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 08-764-SLR |
| | ) |
| STAUB DESIGN, LLC; | ) |
| JOHN STAUB; and DAVID STAUB; | ) |
| | ) |
| Defendants. | ) |

David John Carnivale, Staten Island, New York. Pro se Plaintiff.

Peter J. Duhig, Esquire of Buchanan Ingersoll & Rooney PC, Wilmington, Delaware. Counsel for Defendants. Of Counsel: S. Lloyd Smith, Esquire and Bryce J. Maynard, Esquire of Buchanan Ingersoll & Rooney PC, Alexandria, Virginia.

**OPINION**

Dated: December 13, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff David John Carnivale ("plaintiff") filed a complaint against defendants Staub Design, LLC, John Staub, and David Staub (collectively, "defendants") in the United States District Court for the Eastern District of New York on May 30, 2007. (D.I. 1) The complaint alleges that defendants' use of the domain name www.theaffordablehouse.com violates the Anticybersquatting Consumer Protection Act ("ACPA"), codified as § 43(d) of the Lanham Act, 15 U.S.C. § 1115(d). (D.I. 1) The case was transferred to this court on October 10, 2008. (D.I. 27)

On March 31, 2010, this court granted in part and denied in part plaintiff's motion for summary judgment and denied defendants' cross-motion for summary judgment.[1] (D.I. 57) The court found that plaintiff sufficiently proved his mark's distinctiveness and that defendants' domain name and plaintiff's mark are identical or confusingly similar, but the court determined that a fact finder must weigh the factors relevant to the bad faith inquiry. (Id.) A bench trial was held on August 3, 2010 to determine whether defendants acted in bad faith. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Having considered the documentary evidence and testimony, the court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

---

[1] See Carnivale v. Staub Design, LLC, 700 F. Supp. 2d 660 (D. Del. 2010).

## II. BACKGROUND

The parties do not contest the following facts. Plaintiff is an architect from Staten Island, New York. (DTX-31) Defendant Staub Design, LLC ("Staub Design") is a Delaware limited liability corporation that was formed on February 9, 2005 (DTX-25); its principal place of business is in Arlington, Virginia (DTX-27). Staub Design is a residential design company focused on the application of autoclaved aerated concrete ("AAC"), a lightweight building material. (*Id.*) Defendants John and David Staub are principals of Staub Design. (*Id.*)

Plaintiff wrote a book entitled "The Affordable House," which was copyrighted on January 26, 1996. (PTX-2) On March 15, 1996, plaintiff published his book on the internet at www.affordablehouse.com. (DTX-51) Plaintiff registered the domain name www.affordablehouse.com on July 20, 1998 and has renewed it continuously since that date. (PTX-3 - PTX-7) Plaintiff's website contains home plan designs and excerpts from his book, and he uses his website to advertise blueprints and copies of his book for sale. (DTX-31)

In 2000, defendants John and David Staub built a house in South Dakota using AAC as a building material. (8/3/10 Tr. at 78:2-25) Defendants referred to this house as "The Affordable House" and described the house as an embodiment of the "concept of The Affordable House," representing a house that is "affordable on many angles." (8/3/10 Tr. at 115:17-25)

In the spring of 2004, defendants brainstormed a list of potential domain names for a website they planned to create. (PTX-34) During their research of various domain names, defendants learned that plaintiff had previously registered the domain name

2

www.affordablehouse.com. (PTX-34) On May 7, 2004, defendant John Staub registered the domain name www.theaffordablehouse.com under his name and contact information and has renewed the registration using his updated contact information since that date. (DTX-1) Defendants registered several other domain names as well, but none of these other domain names resembled plaintiff's book title and domain name. (DTX-1; DTX-20; DTX-24)

Beginning in December of 2004, defendants posted information on AAC at www.theaffordablehouse.com. (PTX-34) Defendants used the slogan "The Affordable House – a project of Staub Design LLC" at the top of each page on their website and on booths at renewable energy conferences held between 2005 and 2007. (*Id.*) The website provided information and links to resources about AAC as well as background on Staub Design's focus on the application of AAC. (PTX-31) Although defendants did not directly offer anything for sale at www.theaffordablehouse.com, they directed viewers to contact John and David Staub with inquiries regarding AAC. (*Id.*)

Plaintiff filed his application for registration of the mark THE AFFORDABLE HOUSE on January 4, 2005, certifying use of the mark in commerce since March 15, 1996. (PTX-10) On February 14, 2006, plaintiff secured U.S. Trademark and Service Mark Registration No. 3,058,545 for "architectural plans and specifications" and "on-line retail store services featuring books and sets of blue prints" on the basis of 15 U.S.C. § 1051(a), § 1(a) of the Lanham Act. (PTX-8) Defendants have not licensed the mark THE AFFORDABLE HOUSE. (PTX-34)

Plaintiff discovered defendants' website at www.theaffordablehouse.com in March 2007 and sent defendants a cease and desist letter, asserting his rights to the

mark THE AFFORDABLE HOUSE and stating his belief that defendants' use of the domain name www.theaffordablehouse.com constituted infringement. (PTX-25) On May 3, 2007, defendants moved the content of www.theaffordablehouse.com to www.staubdesign.com in response to plaintiff's letter. (PTX-34) Defendants did not offer to sell the allegedly infringing domain name to plaintiff. (8/3/10 Tr. at 101:9-12)

On May 16, 2007, defendants filed a petition for cancellation of plaintiff's registration with the United States Patent and Trademark Office ("PTO") Trademark Trial and Appeal Board ("TTAB"), Cancellation No. 92047553. (PTX-34) The TTAB has suspended the cancellation proceeding pending the resolution of this lawsuit. (*Id.*); *Staub Design, LLC v. Carnivale*, Cancellation No. 92047553, #11 (October 18, 2007), http://ttabvue.uspto.gov/ttabvue/v?pno=92047553&pty=CAN&eno=11.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Legal Standard

To prevail under the ACPA, plaintiff must prove that defendants acted with a bad faith intent to profit from plaintiff's mark. 15 U.S.C. § 1125(d)(1). Section 43(d)(1)(B)(I) of the Lanham Act, 15 U.S.C. § 1125(d)(1)(B)(i), provides a non-exhaustive list of nine factors for determining whether a plaintiff has shown the requisite bad faith:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site

accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in a bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). The Third Circuit has stated that applying these factors "is a holistic, not mechanical, exercise." *Green v. Fornario*, 486 F.3d 100, 106 (3d Cir. 2007). "[T]he presence or absence of any of these [nine] factors may not be determinative." Sen. Rep. No. 106-140, at 9 (1999). The plaintiff must prove, by a preponderance of the evidence, that these factors weigh in favor of a finding of bad faith. *See* 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:78 (4th ed. 2010).

## B. Discussion

Applying the nine factors set forth in 15 U.S.C. § 1125(d)(1)(B)(i) to the instant case, the court concludes that plaintiff has met his burden of proving that defendants acted in bad faith. Specifically, the court concludes that the first, second, third, fourth, fifth, and ninth factors weigh in favor of bad faith, and the sixth, seventh, and eighth factors weigh against bad faith. Balancing these factors qualitatively in light of the circumstances in this case, the court concludes that the record supports plaintiff's contention that defendants acted in bad faith.

### 1. Trademark rights in the domain name

The court must first determine whether defendants owned any trademark or other intellectual property rights in the domain name. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I). Defendants do not own, or claim to own, any rights in any trademark that is identical or similar to THE AFFORDABLE HOUSE. As a result, the court concludes that the first factor weighs in favor of bad faith.

### 2. Legal name or nickname contained in the domain name

Second, the court must determine the extent to which the domain name consists of the defendants' legal name or a name commonly used to identify defendants. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(II). In this case, neither THE AFFORDABLE HOUSE nor a term similar to THE AFFORDABLE HOUSE is the legal name or nickname of defendants Staub Design, John Staub and/or David Staub. Furthermore, the mark bears no resemblance to AAC, which is the primary focus of defendants' website. Therefore, the court concludes that the second factor weighs in favor of bad faith.

### 3. Prior use of the domain name in connection with the bona fide offering of any goods or services

The third factor requires a showing that defendants previously used the domain name in connection with the bona fide offering of goods or services. See 15 U.S.C. § 1125(d)(1)(B)(i)(III). As to the third factor, no bona fide use by defendants of THE AFFORDABLE HOUSE predates plaintiff's use of the mark because plaintiff began using the mark in 1996, at least eight years prior to defendants' registration of the domain name in 2004. See Internat'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco, 192 F. Supp. 2d 467, 486 (E.D. Va. 2002) (concluding that third factor supported finding of bad faith where counterclaim plaintiff used mark since 1863, even though counterclaim plaintiff's U.S. trademark application remained pending, because no use by counterclaim defendant companies predated counterclaim plaintiff's use of the mark). Accordingly, the court concludes that the third factor weighs in favor of bad faith.

### 4. Bona fide noncommercial or fair use of the mark

The fourth factor is whether defendants engaged in any bona fide noncommercial or fair use of the mark THE AFFORDABLE HOUSE. See 15 U.S.C. § 1125(d)(1)(B)(i)(IV). The purpose of this factor is to protect domain name registrants and users engaged in protected activities. Internat'l Bancorp, 192 F. Supp. 2d at 486 (internal citations omitted). The House Report indicates that

> [t]his factor is intended to balance the interests of trademark owners with the interests of those who would make lawful noncommercial or fair uses of others' marks online, such as in comparative advertising, comment, criticism, parody, news reporting, etc. Under the bill, the use of a domain name for purposes of comparative advertising, comment, criticism,

> parody, news reporting, etc., even where done for profit, would not alone satisfy the bad-faith intent requirement.

H.R. Rep. No. 106-412 (Oct. 25, 1999). Congress did not intend this factor to allow someone to evade liability under the ACPA by opening a noncompeting and noncommercial web page under an otherwise infringing domain name. *See id.*; *see also* 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:78 (4th ed. 2010).

The court finds that defendants' use of the domain name www.theaffordablehouse.com supports a finding of bad faith under the fourth factor because defendants used the mark for commercial purposes. First, the heading "The Affordable House – a project of Staub Design, LLC," which appears at the top of each page on the website, conflates any educational goals of the project with the commercial side of the business. The court does not credit defendants' testimony that defendants' motives were purely based on a desire to educate the public because, if this were true, defendants would have no reason to associate the name of their business with the project. In fact, defendants John and David Staub could have achieved their educational purpose by developing the website in their capacity as individuals without mentioning their business at all.

In addition, the website as a whole fails to distinguish the company's commercial activities from defendants' desire to make information on AAC available to the public. Although defendants deny using www.theaffordablehouse.com as a mechanism to advertise their business activities, the home page of www.theaffordablehouse.com begins with a paragraph describing Staub Design's business as a residential design

and build company focused on the application of AAC, and the website only mentions some of the benefits of working with AAC in later paragraphs and on other pages. (DTX-42) The website also features a separate subheading dedicated exclusively to Staub Design, below which is contact information for John and David Staub, including a Staub Design email address. (PTX-31) The manner in which references to Staub Design are interwoven throughout the website with information on AAC negates a finding that defendants' use of the domain name www.theaffordablehouse.com was for noncommercial purposes.[2] Because the court finds that defendants used plaintiff's mark for commercial purposes, the court concludes that the fourth factor weighs in favor of bad faith.

### 5. Intent to divert consumers from mark owner's website

The fifth factor is whether defendants intended to divert consumers from plaintiff's website to a site accessible under the disputed domain name that could harm the goodwill of plaintiff's mark, either for commercial gain or with the intent to tarnish or disparage the mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the website. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(V). "As intent is rarely discernible directly, it must typically be inferred from pertinent facts and circumstances." *Internat'l Bancorp*, 192 F. Supp. 2d at 486. Courts have held that the wholesale inclusion of a mark in the disputed domain name implies a bad faith intent to divert customers from plaintiff's website. *See id.*

---

[2] The court further notes that defendants had the option of registering the domain name as ".org," which was originally intended for use by non-commercial entities, as defendants claim to be. Defendants instead chose to use the domain ".com" to benefit from its popularity.

Defendants' knowing and wholesale inclusion of the mark THE AFFORDABLE HOUSE in the domain name implies that defendants may have sought to divert customers away from plaintiff's website. Moreover, both plaintiff and defendants are in the business of designing house plans and likely compete for at least part of their client bases. The similarities between the parties' domain names and the nature of their businesses suggest that defendants might be motivated to divert web traffic away from plaintiff's website as a potential competitor. For these reasons, the court concludes that the fifth factor weighs in favor of bad faith.

### 6. Offer to transfer, sell, or otherwise assign the domain name

Sixth, the court must determine whether defendants offered to sell plaintiff's domain name to plaintiff or to a third party for financial gain. See 15 U.S.C. § 1125(d)(1)(B)(i)(VI). Because defendants did not offer the domain name www.theaffordablehouse.com for sale, the court concludes that the sixth factor weighs against bad faith.

### 7. Provision of material and misleading false contact information when registering domain name

Under the seventh factor, the court must determine whether defendants supplied material and misleading contact information when registering the domain name www.theaffordablehouse.com. See 15 U.S.C. § 1125(d)(1)(B)(i)(VII). The court finds that the information provided by John Staub in registering and renewing the domain name was accurate. Thus, the court concludes that the seventh factor weighs against bad faith.

10

### 8. Registration or acquisition of multiple domain names

The eighth factor is whether defendants registered multiple domain names that they knew were confusingly similar to the distinctive marks of others. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VIII). The court finds that www.theaffordablehouse.com was the only domain name registered by defendants that resembled plaintiff's mark in any manner. For this reason, the court concludes that the eighth factor weighs against bad faith.

### 9. Extent to which the mark is distinctive and famous

The ninth factor involves the extent to which the mark incorporated in the registrant's domain name registration is or is not distinctive and famous. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(IX). Given that this court deemed the mark THE AFFORDABLE HOUSE inherently distinctive in its summary judgment decision, 700 F. Supp. 2d 660 (D. Del. 2010), the court concludes that the ninth and final factor supports a finding of bad faith.

Weighing the balance of these nine factors qualitatively in light of the circumstances of the case as a whole, the court concludes that defendants acted in bad faith. Although defendants did not hoard and sell domain names registered under a false name, defendants settled on the domain name www.theaffordablehouse.com to promote their business, even after learning that plaintiff maintained a website at www.affordablehouse.com for similar commercial purposes. Defendants insisted on using the disputed domain name even though it bore no relation to their legal names and had only a tenuous relation to the subject matter of the website. Moreover, defendants lacked credibility in their testimony, drawing nebulous distinctions between

11

their business and their allegedly noncommercial project.

In these circumstances, the court concludes that defendants have violated § 1125(d)(1)(B)(i) of the ACPA and plaintiff shall be awarded statutory damages. The ACPA authorizes a court to award statutory damages in an amount from $1,000 up to $100,000 per domain name violation. See 15 U.S.C. § 1117(d). Under the statute, the court has wide discretion to award statutory damages that it "considers just." *Shields v. Zuccarini*, 254 F.3d 476, 487 (3d Cir. 2001). The court awards statutory damages of $25,000 in light of defendants' bad faith infringement of plaintiff's mark.

## IV. CONCLUSION

The court concludes that defendants used plaintiff's domain name in bad faith. Defendants' use of plaintiff's mark in their domain name, therefore, violates § 1125(d)(1)(B)(i) of the ACPA and plaintiff shall be awarded damages in the amount of $25,000. An order shall issue entering judgment in favor of plaintiff.