IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID JOHN CARNIVALE, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 08-764-SLR |
| ) | |
| STAUB DESIGN, LLC; ) | |
| JOHN STAUB; and DAVID STAUB; ) | |
| ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

At Wilmington this 7th day of January, 2013, on remand from the United States Court of Appeals for the Third Circuit, having considered the parties' briefs on remand and the papers submitted therewith;

IT IS ORDERED that the clerk of court shall enter judgment in favor of plaintiff David John Carnivale and against defendants in the amount of $25,000, as follows:

**1. Background.** Plaintiff David John Carnivale ("plaintiff") filed a complaint against defendants Staub Design, LLC, John Staub, and David Staub (collectively, "defendants") in the United States District Court for the Eastern District of New York on May 30, 2007. (D.I. 1) The complaint alleges that defendants' use of the domain name "theaffordablehouse.com" violates the Anticybersquatting Consumer Protection Act ("ACPA"), codified as § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). (D.I. 1) The case was transferred to this court on October 10, 2008. (D.I. 27)

2. On March 31, 2010, this court granted in part and denied in part plaintiff's motion for summary judgment and denied defendants' cross-motion for summary judgment. (D.I. 57) The court found that plaintiff sufficiently proved his mark's distinctiveness and that defendants' domain name and plaintiff's mark are identical or confusingly similar, but the court determined that a fact finder should weigh the factors relevant to the bad faith inquiry. See *Carnivale v. Staub Design, LLC*, 700 F. Supp. 2d 660 (D. Del. 2010). After a bench trial on August 3, 2010, the court found that defendants used plaintiff's domain name in bad faith and defendants' wholesale use of plaintiff's mark in their domain name violated § 1125(d)(1)(B)(i) of the ACPA. See *Carnivale v. Staub Design, LLC*, 754 F. Supp. 2d 652 (D. Del. 2010). Specifically, the court found "that the first, second, third, fourth, fifth, and ninth factors [of § 1125(d)(1)(B)(i)] weigh in favor of bad faith, and the sixth, seventh, and eighth factors weigh against bad faith. Balancing these factors qualitatively in light of the circumstances in this case, the court concludes that the record supports plaintiff's contention that defendants acted in bad faith." *Id.* at 658. The court entered judgment for plaintiff and awarded damages in the amount of $25,000. *Id.* at 661.

3. On January 12, 2011, defendants appealed this court's order on summary judgment and the judgment for plaintiff. (D.I. 72) On January 4, 2012, the Third Circuit reversed the judgment for plaintiff and remanded the case for further consideration of factors five and nine, "conclud[ing] that the District Court erred in evaluating factors five and nine, . . . [but] leav[ing] to the District Court the task of reanalyzing those factors and determining how any changes affect the overall balance of the factors in this case."

2

*Carnivale v. Staub Design, LLC*, No. 11-1124, 456 Fed. App'x. 104, 108, 2012 WL 11214 (3d Cir. Jan. 4, 2012).

    4. **Legal Standard.** To prevail under the ACPA, plaintiff must prove that defendants acted with a bad faith intent to profit from plaintiff's mark. 15 U.S.C. § 1125(d)(1).

> In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, **but not limited to**--
> . . .
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> . . . and
>
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i) (emphasis added). In passing the ACPA, the Senate sought to prohibit those with a bad faith intent from trading on the goodwill associated with another's mark. S. REP. NO. 106-140, at 4 (1999). In evaluating the requisite bad faith intent, the statute sets forth balancing factors for courts to consider, but the Senate cautioned that "the presence or absence of any of these factors may not be determinative." *Id.* at 9; *see, e.g., Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 368 (D.N.J. 2004). "Courts must ultimately weigh the facts of each case and make a determination based on those facts whether or not the defendant registered, trafficked in, or used the domain name with bad-faith intent to profit from the goodwill of

the mark of another." S. REP. NO. 106-140, at 10. The Third Circuit recognizes that applying these factors "is a holistic, not mechanical, exercise." *Carnivale*, 456 Fed. App'x. at 108 (citation omitted); *Green v. Fornario*, 486 F.3d 100, 106 (3d Cir. 2007). In the first appellate opinion evaluating the bad faith factors of the ACPA, the Second Circuit noted that the most important grounds for a decision "are the unique circumstances of [the] case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute." *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 499 (2d Cir. 2000); *see also Mayflower Transit*, 314 F. Supp. 2d at 368. Courts should also consider "any other elements of bad faith." *Advance Magazine Publishers Inc. v. Vogue Int'l*, 123 F. Supp. 2d 790, 799 (D.N.J. 2000).

5. The fifth factor evaluates "the person's intent to divert consumers." 15 U.S.C. § 1125(d)(1)(B)(i)(V). "As intent is rarely discernible directly, it must typically be inferred from pertinent facts and circumstances." *Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 486 (E.D. Va. 2002). The wholesale inclusion of a mark in the disputed domain name implies a bad faith intent to divert customers from plaintiff's website. *See id.*

6. Plaintiff's website, affordablehouse.com, features the phrase, The Affordable House, in several places, lists plaintiff's book and house plans for sale, and offers help with specific projects or house plans. (DTX-9; DTX-31) Defendants admit to viewing plaintiff's website and noting the copyright. (D.I. 77 at 90:14-24, 131:13-22) Defendants then selected their domain name, theaffordablehouse.com. As this court previously discussed, defendants' knowing and wholesale inclusion of the mark THE

AFFORDABLE HOUSE in the domain name implies that defendants sought to divert customers away from plaintiff's website. See Carnivale, 754 F. Supp. 2d at 660.

7. Defendants claim that their motivation and purpose for their website was to educate the public about a new building material, autoclaved aerated concrete ("AAC"). (D.I. 77 at 83:18-84:3) As previously discussed, defendants could have accomplished this education by using a .org website, but instead chose to register their website as a .com. See Carnivale, 754 F. Supp. 2d at 659-60 & n.2. Defendants admit that they were also interested in remodeling houses and that their company Staub Design, LLC, was intended to make profits. (D.I. 77 at 114:24-115:2, 124:14-15) Defendants tried unsuccessfully in their testimony to separate theaffordablehouse.com website - for teaching purposes - with Staub Design, LLC - for business purposes. (D.I. 77 at 112:25-116:3) Namely, even their earliest website design contained their names and contact information and used the slogan "The Affordable House - a project of Staub Design LLC," tying together the website and the business.[1] (PTX-34)

8. There is no dispute that plaintiff's website offered house plans for sale. (DTX-31) Customers seeking to build a new home would likely be customers for a new building material, a new way to build houses and house plans to build those houses, all

---

[1] This court's discussion of commercial use is also informative. Carnivale, 754 F. Supp. 2d at 659-60. Specifically, "defendants used the mark for commercial purposes. . . . The court does not credit defendants' testimony that defendants' motives were purely based on a desire to educate the public because, if this were true, defendants would have no reason to associate the name of their business with the project. In fact, defendants John and David Staub could have achieved their educational purpose by developing the website in their capacity as individuals without mentioning their business at all. In addition, the website as a whole fails to distinguish the company's commercial activities from defendants' desire to make information on AAC available to the public." Id. at 659.

of which defendants claim to be interested in and which Staub Design, LLC provides. Defendants admit that they found plaintiff's website at affordablehouse.com and then proceeded to use the domain name theaffordablehouse.com. (D.I. 77 at 90:18-24; PTX-34; DTX-1) The most logical conclusion is that defendants sought to profit from an older more established website, one whose customers were shopping for house plans or looking at new housing options.[2] For the forgoing reasons, the court again concludes that the fifth factor weighs in favor of bad faith.

9. The ninth factor involves the extent to which the mark incorporated in the registrant's domain name registration is or is not distinctive and famous. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(IX). This court deemed the mark inherently distinctive in its summary judgment decision. *See Carnivale*, 700 F. Supp. 2d at 664-67. Plaintiff's trademark registration was applied for and "accepted on the basis of § 1(a) of the Lanham Act, the actual use in commerce provision, with no reliance on § 2(f), the acquired distinctiveness/secondary meaning provision," and plaintiff presented evidence of continuous use since 1996. *Id.* at 665-66. In line with the Third Circuit's instruction to evaluate "how strong or distinctive [plaintiff]'s mark was," this court now turns its attention to the factors from § 1125 (c)(2)(A):

---

[2] The Third Circuit noted that this court's conclusion under the analysis of the second factor that "the mark [THE AFFORDABLE HOUSE] bears no resemblance to AAC, which is the primary focus of defendants' website," seems at odds with a conclusion that the businesses would share customers. *Carnivale*, 456 Fed. App'x. at 107 n.1. Defendants continually assert that the use of AAC as a building material is the focus of their website. The second factor focuses on whether the domain name consists of the legal name or a name commonly used to describe defendants. THE AFFORDABLE HOUSE is not defendants' name nor does it imply or relate to AAC or building materials. The more detailed analysis of the fifth factor provided here should clarify this court's rationale for its conclusion.

6

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
(iii) The extent of actual recognition of the mark.
(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

10. This court partly evaluated these factors in its summary judgment decision under the analysis used in Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001), which applied the statutory factors from § 43(c) of the Lanham Act.[3] See, Carnivale, 700 F. Supp. 2d at 666 & n.1. Plaintiff has continuously maintained his website since 1996, which is a form of advertising and has unlimited reach. Plaintiff has advertised in at least two print publications, Fine Home Building Magazine in 2002 and the Seattle Times in 2004. (PTX-15; PTX-16) Plaintiff offered his book and blueprints for sale, as well as his architectural services. Plaintiff has presented evidence of orders for his book and/or house plans each year from 1996-2008. (D.I. 1 app. 41-64; PTX-17 to PTX-23) He did not testify as to the volume of sales. Plaintiff sold his book and house plans, to customers throughout the United States, as well as from Canada, Australia and Japan. (D.I. 1 app. 42-66; PTX-17 to PTX-23) Plaintiff has only offered his own testimony of the recognition of his mark. Finally, plaintiff's mark is registered, albeit after defendants' registration of their domain name. Balancing the evidence, the court concludes that, while not the strongest mark, plaintiff's mark is distinctive.

11. The Third Circuit also instructed this court to evaluate the secondary meaning factors presented in Browne Drug Co. v. Cococare Prods., Inc., 583 F.3d 185,

---

[3] §43(c) was rewritten as part of the 2006 amendments.

7

199 (3d. Cir. 2008). See Carnivale, 456 Fed. App'x. at 108. These are:

> (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion.

Browne Drug, 583 F.3d at 199. Summarizing the discussion above, plaintiff has shown that he has continuously operated his website since 1996 and advertised in at least two print sources. (PTX-15; PTX-16) He has offered letters showing orders every year from 1996-2008, coming from across the United States and a few from abroad. (D.I. 1 app. 42-66; PTX-17 to PTX-23) His website was included as a finalist for website of the year in 2003 by Business and Economics Architecture magazine. (PTX-14) Plaintiff has not offered any surveys or customer testimony apart from that contained in some of the order letters, nor has he presented the number of customers or sales. Finally, plaintiff has not offered evidence of actual confusion. Conversely, defendants have only offered their own opinion on the weakness of plaintiff's mark. (D.I. 77 at 88:12-22; D.I. 9-10) Defendants presented an exhibit containing printouts of the domain names affordablehouse.us and affordablehouse.info. (DTX-10) As these domain names are not .com websites, they do not impact the court's analysis. Defendants' other evidence consists of printouts of six websites.[4] (DTX-10; DTX-11) The closest domain names were buildingaffordable.com and affordablehouses.com.[5] (Id.) Several of the websites

---

[4] The websites are: afordablehouses.com, buildingaffordable.com, eplans.com, simplehome.com, lchouseplans.com, frankbetz.com.

[5] This court is not convinced that the website affordablehouses.com was an active domain name, as the printout that defendants provided, dated June 16, 2010, seems to offer up the domain name for sale.

use the phrase "affordable house(s)" to describe their content; however, with the exception of affordablehouses.com, none of these use "affordable house" in their domain name. Defendants have not offered any evidence from actual consumers. Balancing the record before it and giving due consideration to the lack of evidence for certain factors, the court concludes that the balance tips slightly in favor of plaintiff's mark having some secondary meaning. Overall, this court concludes again that the ninth factor slightly supports a finding of bad faith.

12. To round out its holistic analysis of the unique circumstances in this case, this court also considers the following. Defendants went out of their way to use plaintiff's domain name in its entirety in their own domain name after viewing it online. While defendants asserted that they did not wish to spend money on the domain name disagreement, defendants filed a petition for cancellation of plaintiff's registration with the United States Patent and Trademark Office Trademark Trial and Appeal Board, Cancellation No. 92047553, on May 16, 2007. (D.I. 54 at 2) Defendants assert that they are pursuing this case on principal, wanting only to educate the public about a new building material. Defendants' alleged principled stand does not ring true in light of their actions or testimony. Other domain names would easily accomplish defendants' alleged goal of educating the public. Defendants' testimony failed to substantiate their claims that the website was for educational not business purposes, and that the domain name theaffordablehouse.com was a key factor in accomplishing this educational goal.

13. **Conclusion.** The court has carefully reexamined factors five and nine in the evaluation of bad faith and the unique circumstances of this case. The court again concludes that defendants' use of the domain name theaffordablehouse.com was in

bad faith, as it uses plaintiff's mark in violation of § 1125(d)(1)(B)(i) of the ACPA.[6] The court awards statutory damages of $25,000 in light of defendants' bad faith infringement of plaintiff's mark. See 15 U.S.C. § 1117(d). Defendants may not resume usage of the domain name.

*/s/ Sue L. Robinson*
United States District Judge

---

[6] As previously stated:

> Weighing the balance of these nine factors qualitatively in light of the circumstances of the case as a whole, the court concludes that defendants acted in bad faith. Although defendants did not hoard and sell domain names registered under a false name, defendants settled on the domain name www.theaffordablehouse.com to promote their business, even after learning that plaintiff maintained a website at www.affordablehouse.com for similar commercial purposes. Defendants insisted on using the disputed domain name even though it bore no relation to their legal names and had only a tenuous relation to the subject matter of the website. Moreover, defendants lacked credibility in their testimony, drawing nebulous distinctions between their business and their allegedly noncommercial project.

Carnivale, 754 F. Supp. 2d at 661.